UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| INSITUFORM TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:05CV1116 CDP |
| REYNOLDS, INC., et al., | ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Insituform Technologies, Inc. sued Larry Dean Purlee, along with three other defendants, on various counts after a former Insituform employee, Robert Steven Vance, left Insituform and began working for a competitor, defendant Reynolds Inliner, LLC. Insituform seeks damages on three grounds: tortious interference with a contract, misappropriation of trade secrets, and conspiracy. Purlee now moves to dismiss these claims against him for lack of personal jurisdiction. For the reasons set forth below, I will deny Purlee's motion.

## Facts

Insituform, a Delaware corporation with its principal place of business in Missouri, has been engaged in the business of providing proprietary technologies

and services for rehabilitating sewer, water, and other underground piping systems for over twenty years. Among the processes Insituform uses is trenchless technology, a process which allows underground pipes to be repaired from the inside, without having to dig them up and replace them. Insituform competes in the trenchless technology business with Reynolds, Inc. and its subsidiary, Reynolds Inliner, LLC, both Indiana corporations.

Robert Steven Vance worked for Insituform for over ten years.[1] During his tenure with the company, he learned of and was granted access to many of Insituform's trade secrets, including production and installation techniques and practices, employee training procedures, information concerning costs, pricing, finances, and marketing methods, and information regarding pricing and bidding strategies, margins and techniques. In May, 2002, Vance entered into a "Confidentiality, Work-Product and Non-Competition Agreement" with Insituform. By the express terms of this agreement, Vance agreed that he would not "be employed by, provide any service to, operate or acquire any ownership interest in, any business that competes with the products or services provided by [Insituform]" for one year and one month after termination of his employment.

Despite this Agreement, Vance telephoned Purlee in 2003 and again in

---

[1] Robert Steven Vance was dismissed from this case on July 5, 2005.

January, 2004, seeking employment. Purlee is a Vice President of Reynolds, Inc. and an Executive Vice President of Reynolds Inliner, LLC. Purlee invited Vance to travel from Missouri to Indiana for an interview in April, 2004. On May 26, 2004, Purlee sent Vance a written offer of employment with Reynolds Inliner, LLC, as the Operations Manager in the Baytown, Texas office. Soon thereafter, Vance informed Purlee of the confidentiality and non-compete agreement he had with Insituform, and faxed Purlee a copy of the Agreement. Purlee did not rescind Vance's offer.

On or about June 14, 2004, Vance submitted his resignation to Insituform. Sometime in July or August he accepted Purlee's offer of employment and began working as the Operations Manager at Reynolds Inliner, LLC's Baytown, Texas office.

On October 18, 2004, Insituform filed a lawsuit in St. Louis County Circuit Court seeking to enforce the terms of the Agreement. In April, 2005, the state court entered a preliminary injunction against Vance, at which time Reynolds Inliner, LLC terminated Vance's employment. Insituform filed an amended complaint in state court on June 9, 2005, and the defendants removed the case to this Court on July 19, 2005. Three counts against Reynolds, Inc., Reynolds Inliner, LLC, and Purlee remain: (1) misappropriation of trade secrets in violation of the Missouri Uniform

Trade Secret Act, Mo. Rev. Stat. § 417.450, et seq.; (2) tortious interference with contract; and (3) conspiracy.

## Discussion

A court reviewing a motion to dismiss for lack of personal jurisdiction must engage in a two-part inquiry. First, the court must examine whether the defendant is subject to the court's jurisdiction under the state long-arm statute. Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998) (citation omitted). If so, then the court must determine "whether the exercise of personal jurisdiction comports with the requirements of due process." Stanton v. St. Judge Medical, Inc., 340 F.3d 690, 693 (8th Cir. 2003). When making both of these determinations, a court must review written submissions in a light most favorable to the non-moving party. Id. (citing Wines v. Lake Havasu Boat Mfg., Inc., 846 F.2d 40, 42 (8th Cir. 1988) (per curiam)). Additionally, a court is permitted to consider matters outside the pleadings. Stevens, 146 F.3d at 543.

### 1. Missouri's Long-Arm Statute

To determine whether the Court has personal jurisdiction over Purlee, I must first consider whether Insituform "has made a prima facie showing that the claims in [its] suit fall within the scope of the Missouri long-arm statute." Stevens, 146 F.3d at 543. "United States District Courts located in Missouri are required to construe

4

the state's long arm statute in the same manner that Missouri state courts do." Koch Supplies, Inc. v. Charles Needham Indus., 1990 WL 274485, at *2 (W.D. Mo. Nov. 14, 1990) (citing Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, 747 F.2d 448 (8th Cir. 1984)). Missouri courts have construed the state's long-arm statute to extend jurisdiction of the state's courts over nonresident defendants to the extent possible under the Due Process Clause. Moog World Trade Corp. v. Bancomer, 90 F.3d 1382, 1384 (8th Cir. 1996) (citations omitted).

The relevant provisions of Missouri's long-arm statute read as follows:

1. Any person of firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
...
    (3) The commission of a tortious act within this state;
...
3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Mo. Rev. Stat. § 506.500. The phrase "commission of a tortious act within this state" has been interpreted by Missouri courts as including "extraterritorial acts which produce actionable consequences in Missouri." Harrison v. Union Pacific R. R. Co., 45 F.Supp.2d 680, 682 (E.D. Mo. 1999) (citations omitted). "A single

tortious act may be sufficient to justify a Missouri court's exercise of personal jurisdiction over a nonresident defendant." Golden State Strawberries, 747 F.2d at 453. Because the facts establishing jurisdiction under this statutory provision are identical to the merits of the tort claim itself, a plaintiff must make a prima facie showing that the defendant has committed the tort alleged in the complaint in order to survive a motion to dismiss for lack of personal jurisdiction. Peabody Holding Co., Inc., et al. v. Costain Group PLC, et al., 808 F.Supp. 1425, 1433 (E.D. Mo. 1992) (citation omitted).

Insituform brings three tort claims against Purlee in his individual capacity. First, Insituform alleges that Purlee misappropriated trade secrets in violation of the Missouri Uniform Trade Secret Act, Mo. Rev. Stat. § 417.450, et seq. The statute defines "misappropriation" to include the "[a]cquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means." Mo. Rev. Stat. § 417.453(2). "Improper means" includes a "breach or inducement of a breach of a duty to maintain secrecy." Mo. Rev. Stat. § 417.453(1). To make out a prima facie case of misappropriation against Purlee, Insituform is not required to show that Purlee personally accepted, used and/or disclosed Insituform's trade secrets. See Grothe v. Helterbrand, 946 S.W.2d 301, 304-05 (Mo. Ct. App. 1997). Rather, Insituform must simply provide

sufficient evidence from which a jury could reasonably infer that Purlee aided and abetted the corporation's acts of misappropriation. Id.

Insituform has met this standard. Insituform's allegations portray Purlee as the in-house architect of a plan that resulted in the transfer of Insituform's trade secrets to Reynolds Inliner, LLC through the hiring of Vance. According to the complaint, Purlee was well aware of the knowledge and expertise Vance possessed in trenchless technology, as well as the confidential nature of this information and the non-compete agreement. Nevertheless, Purlee did not retract his offer of employment to Vance. The complaint further alleges that once Vance began working for Reynolds Inliner, LLC, he shared confidential information with his new employer. While Insituform does not allege, by name, that Purlee accepted, used, and/or disclosed Insituform's trade secrets, it does present sufficient allegations which, if proved, could lead a reasonable jury to conclude that Purlee aided and abetted the alleged acts of misappropriation.

Second, Insituform alleges that Purlee tortiously interfered with Vance and Insituform's "Confidentiality and Non-Compete Agreement." Under Missouri law, a claim of tortious interference with a contract consists of the following elements: (1) a contract; (2) defendant's knowledge of the contract; (3) intentional interference by the defendant inducing or causing a breach of the contract; (4) absence of

7

justification; and (5) damages resulting from the defendant's conduct. <u>Community Title Co. v. Roosevelt Sav. and Loan Ass'n</u>, 796 S.W.2d 369, 372 (Mo. 1990) (en banc) (citation omitted).

Purlee contends that in addition to these five elements, Insituform must allege that Purlee acted out of self-interest and used improper means. I disagree. "A corporate officer, acting within his or her authority, is privileged to induce a breach of a corporate contract provided that he or she uses no improper means, acts in good faith to protect the corporate interest and does not act out of self interest." <u>Meyer v. Enoch</u>, 807 S.W.2d 156, 159 (Mo. Ct. App. 1991) (citation omitted). This privilege, however, does not extend beyond a corporate officers' interference with the corporation's own contracts.[2] See <u>Jurisprudence Wireless Communications, Inc. v. Cybertel Corp.</u>, 26 S.W.3d 300, 303 (Mo. Ct. App. 2000) (privilege applied

---

[2] The limited application of this privilege can be explained as follows. Generally, the tort of interference with a contract cannot lie against a party to the contract. <u>Jurisprudence</u>, 26 S.W.3d at 302. Likewise, because an officer or agent of a corporation acting within his or her official capacity is the corporation for purposes of the tort, a corporate officer cannot be held liable for tortiously interfering with the corporation's own contracts. See <u>Fields v. R.S.C.D.B., Inc.</u>, 865 S.W.2d 877, 879 (Mo. Ct. App. 1993) (citation omitted). This rationale does not apply in a situation where, as here, neither the corporation nor the corporate officer were parties to the contract at issue. In this situation, as with all tortious corporate conduct, the corporate officer is individually liable for tortious corporate conduct in which he or she knowingly participates. <u>Omaha Indemnity Corp., et al. v. Royal American Managers, Inc., et al.</u>, 755 F. Supp. 1451, 1458 (W.D. Mo. 1991) (citations omitted).

where contract at issue was between plaintiff and defendant corporation); Meyer, 807 S.W.2d at 159 (same). In this case, Insituform alleges that Purlee interfered with the agreement between Vance and Insituform, to which Purlee, Reynolds, Inc., and Reynolds Inliner, LLC were not parties. Therefore, this privilege and its corresponding heightened pleading requirement does not apply.

In the alternative, Purlee argues that Insituform's allegations fail to demonstrate that he intentionally interfered with Vance's contract. Purlee relies exclusively on the fact that Vance initiated contact with Purlee concerning possible job openings at Reynolds. Again, I find Purlee's argument unavailing. Viewing the facts and inferences in a light most favorable to Insituform, Purlee took several steps to induce Vance to breach his agreement with Insituform, including inviting him on a paid recruiting visit to Indiana and extending him an offer of employment. More importantly, Purlee did not alter his course of conduct or retract Vance's offer after receiving a faxed copy of Vance's agreement with Insituform. Instead, he continued to recruit Vance and eventually hired him, knowing full well that Vance's employment with Reynolds Inliner, LLC violated the express terms of the agreement.

Insituform's third claim against Purlee alleges that Purlee conspired with the defendants "and others" to appropriate Insituform's secret and confidential

information for their own use. "A civil conspiracy is an agreement between at least two persons to do an unlawful act, or to use unlawful means to do an act which is lawful." Blaine v. J.E. Jones Construction Co., 841 S.W.2d 703, 713 (Mo. Ct. App. 1992) (citations omitted). "The conspiracy itself is not actionable. Some wrongful act to the plaintiff's damage must have been done by one or more of the defendants, and the fact of a conspiracy merely bears on the liability of the various defendants as joint tortfeasors." Stevens, 146 F.3d at 545 (citation omitted). To make a prima facie case of civil conspiracy, one must show: (1) two or more persons; (2) with an unlawful objective; (3) a meeting of the minds; (4) the commission of at least one act in furtherance of the conspiracy; and (5) resulting damage to the plaintiff. Oak Bluff Partners, Inc. v. Meyer, 3 S.W.3d 777, 781 (Mo. 1999) (en banc) (citation omitted). Finally, a corporation cannot conspire with one of its own employees unless that employee has an independent personal stake in achieving the object of the conspiracy. Mika v. Cent. Bank of Kansas City, 112 S.W.3d 82, 94 (Mo. Ct. App. 2003) (citations omitted).

According to Insituform, Purlee conspired with Vance, among others, by negotiating and implementing a plan that brought Vance, along with his confidential information, from Insituform to Reynolds in violation of Vance's employment agreement with Insituform. Insituform further alleges that Reynolds Inliner, LLC

was ultimately able to acquire confidential and secret information from Insituform once Vance joined the company. These allegations, if true, demonstrate that Purlee actively participated in a conspiracy to appropriate trade secrets from Insituform.

In sum, after reviewing the record in its entirety and viewing all facts and inferences in a light most favorable to Insituform, I find that the plaintiff has satisfied Missouri's long-arm statute by alleging sufficient facts to make out a prima facie case of misappropriation of trade secrets, tortious interference with contractual relations, and conspiracy against Purlee.

## 2. Minimum Contacts

Purlee argues that even if Insituform has successfully made out a prima facie case against him on each of the three claims, Insituform has failed to demonstrate that personal jurisdiction satisfies due process. To satisfy due process, a defendant "must have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, et al., 326 U.S. 310, 316 (1945) (quoting Miliken v. Meyer, 311 U.S. 457, 463 (1940)). A defendant's contacts with the forum state must be more than simply random, fortuitous, or attenuated. Digi-Tel Holdings, Inc. v. Proteq Telecomm, Inc., 89 F.3d 519, 522 (8th Cir. 1996)

11

(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." Pecoraro v. Sky Ranch for Boy, Inc., 340 F.3d 558, 562 (8th Cir. 2003) (citing Burger King, 471 U.S. at 475 and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The Eighth Circuit examines the following five factors to determine whether these constitutional requirements for personal jurisdiction have been met: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. Digi-Tel, 89 F.3d at 522-23. "The first three factors are closely related and of primary importance, while the last two factors are secondary." Pecoraro, 340 F.3d at 562 (citing Digi-Tel, 89 F.3d at 523).

Insituform does not allege that Purlee has maintained substantial and continuous contacts with Missouri sufficient to justify the exercise of general jurisdiction over him. See Perkins, 342 U.S. 437, 438 (1952); Burlington Industries, Inc. v. Maples Industries, Inc., 97 F.3d 1100, 1103 (8th Cir. 1996) (discussing the differences between specific and general jurisdiction). Instead, Insituforum

12

contends that because Purlee's few contacts with Missouri are directly related to the allegations that are the subject of this lawsuit, specific jurisdiction is appropriate. I agree.

As a general matter, the commission of extraterritorial tortious conduct having consequences in Missouri is alone insufficient to satisfy due process. Peabody, 808 F. Supp. at 1437 ("a plaintiff may not invoke tortious long-arm jurisdiction consistent with due process where the non-resident defendant had no contact with Missouri besides the extraterritorial acts having consequences in Missouri.") (citing long list of cases); May Dept. Stores Co. v. Wilansky, 900 F. Supp. 1154, 1161 (E.D. Mo. 1995). Similarly, "the use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process." Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co., 558 F.2d 450, 453 (8th Cir. 1977). See also Burlington, 97 F.3d at 1103 (same). However, where a non-resident defendant makes phone calls to Missouri as part of extraterritorial tortious conduct that is deliberately aimed at a Missouri plaintiff, personal jurisdiction over the non-resident defendant does not offend fair play and substantial justice. Peabody, 808 F. Supp. at 1438-39 (holding that a corporate officer's telephone calls into Missouri as part of his alleged tortious interference with the plaintiffs' contract were sufficient to satisfy due process). See also Vanliner Ins. Co. v. All Risk

13

Service, Ltd., 990 F. Supp. 1145, 1150 (E.D. Mo. 1997) (citing Peabody to hold that corporate officer's phone calls and wire transmissions with Missouri plaintiff, as part of the officer's tortious conduct, were sufficient to permit exercise of personal jurisdiction).

As with the individual defendants in Peabody and Vanliner, Purlee completed his alleged tortious conduct by utilizing telephone and fax communications with Vance while Vance was working in Missouri. Although Vance may have initiated several of these contacts, Vance's initial phone calls evolved into an on-going dialogue between Purlee and Vance that lasted several months. The subject of these telephone and fax communications – Vance's move from Insituform to Reynolds, Inliner, LLC – now forms the basis for each of the three claims against Purlee. While forcing Purlee to litigate this case in Missouri may impose some hardship on him, he should have reasonably expected such a hardship would result from inducing an employee of a Missouri corporation, who was working in Missouri, to breach the express terms of a Missouri employment contract. For these reasons, personal jurisdiction over Purlee does not offend notions of fair play and substantial justice and thus satisfies due process.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Larry Dean Purlee's motion to

dismiss for lack of personal jurisdiction [# 15] is denied.

                                                  _____
                                                  CATHERINE D. PERRY
                                                  UNITED STATES DISTRICT JUDGE

Dated this 7th day of October, 2005.