UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>REYNOLDS, INC., et al., )<br>)<br>Defendants. ) | Case No. 4:05CV1116 CDP |

## **MEMORANDUM AND ORDER**

Despite having a non-compete agreement, Robert Vance began working for a competitor when he quit his job at Insituform Technologies, Inc. Insituform sued him in state court, and after some discovery it added as defendants the new employer, Reynolds, Inc., and its subsidiaries Reynolds Inliner, LLC and Inliner Technologies, LLC, as well as Larry Purlee, a Reynolds Vice President. Vance agreed to a permanent injunction and stopped working at Reynolds, and Insituform dismissed its damages claims against him without prejudice. The remaining defendants then removed the case to this court. They now seek summary judgment on Insituform's claims of tortious interference with contract, misappropriation of trade secrets, and civil conspiracy. Insituform has filed its own motion for partial summary judgment. Because there are numerous genuine disputes of material fact, I will deny both motions for summary judgment.

**Factual Background**

Insituform and Reynolds are competitors in the business of rehabilitating underground pipes. During his fifteen years at Insituform, Robert Vance worked as a regional manager, operations manager, project manager, and training manager. Vance had signed a confidentiality and non-compete agreement at Insituform. He left Insituform in June of 2004 and began working for Reynolds the next month. Vance actually began talking to Reynolds in January of 2004, and there is evidence that he continued to have access to considerable Insituform proprietary information during the time he was negotiating with Reynolds to leave Insituform. Vance has admitted that he provided at least one Insituform document to Reynolds, although the parties dispute whether this – or other information he may have shared with Reynolds – constituted protected trade secrets. Reynolds personnel knew about the non-compete when they negotiated with and hired Vance.

**Discussion**

Because there are so many disputed facts, I need not engage in a lengthy discussion of all the evidence each side has presented. The factual disputes I mention here are not the only ones.

Defendants argue that Insituform's suit is barred in its entirety under the

Eighth Circuit's decision in K'Force, Inc. v. Surrex Solutions Corp., 436 F.3d 981 (8th Cir. 2006). In that case, the Eighth Circuit held that Missouri law barred a plaintiff from bringing a suit against its former employee's new employer when the plaintiff had already filed and settled a suit with the employee for the same injury. K'Force is easily distinguished from the case here, and it does not bar recovery by Insituform. In K'Force the rationale was that the plaintiff could not recover in tort from the new employer the same damages that it had already recovered as contract damages from the employee. Insituform is not seeking to recover the same thing from the remaining defendants that it already obtained from Vance. All it obtained from Vance was an injunction barring his future breach of the contract and barring future tortious conduct. It did not obtain any damages for Vance's past breach of contract or for his past tortious conduct. Insituform dismissed its damage claims against Vance without prejudice, and it specified in the settlement agreement that it was not compromising or releasing the claims it had already filed against the remaining defendants. The injunction against Vance is not even a final judgment. Finally, under Mo. Rev. Stat. § 537.060, when a settlement agreement is "given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so

provide." Insituform's settlement with Vance fits squarely within this statutory provision.

Insituform's first claim alleges misappropriation of trade secrets in violation of the Missouri Uniform Trade Secrets Act. To establish a claim under MUTSA, Insituform must establish that the information at issue constitutes trade secrets and that defendants misappropriated them. Lyn-Flex West, Inc. v. Dieckhaus, 24 S.W.3d 693, 697-699 (Mo. Ct. App. 1999). Insituform may prove misappropriation in one of two ways, by establishing that defendants: (1) acquired a trade secret that they knew or had reason to know was acquired through "improper means," such as theft, bribery, or inducing one to breach a duty of secrecy or (2) disclosed or used an Insituform trade secret that they knew or had reason to know was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Mo. Rev. Stat. § 417.453(2); see also BP Chemicals Ltd. v. Jiangsu Sopo Corp., 285 F.3d 677, 683 (8th Cir. 2002). Insituform has presented evidence that could be viewed as showing that Vance took at least one trade secret document and gave it to Reynolds, and that perhaps he shared other trade secret information. Since Reynolds knew of Vance's non-compete and confidentiality agreement, and since Reynolds considered its own similar information to be confidential, it may have had reason to know the

information was wrongfully acquired or wrongfully disclosed. Reynolds' witnesses initially denied that Vance gave them the document, which a jury could view as showing knowledge of impropriety. On the other hand, Reynolds has presented evidence that could be viewed as proving that the information was not really secret or that Insituform did not adequately protect it, and that Reynolds had no reason to suspect that Vance had done anything wrong in sharing the information. The parties have provided a great deal of evidence, but that evidence does not point all in one direction. Instead, interpreting it requires many factual and credibility determinations.

Insituform's second claim against defendants alleges tortious interference with Vance's non-compete agreement. In order to establish a claim for tortious interference with contract under Missouri law, Insituform must establish: "(1) a contract or valid business expectancy; (2) defendants' knowledge of the contract or relationship; (3) a breach induced or caused by defendants' intentional interference; (4) absence of justification; and (5) damages." Lyn-Flex West, Inc., 24 S.W.3d at 700. Again, disputes remain on all or almost all of these elements. Reynolds argues that the contract was unenforceable because Vance was constructively laid off; this argument presents numerous issues of disputed fact. Absence of justification may depend on whether trade secrets were involved,

which is also disputed. Reynolds argues that Insituform cannot prove damages, but Insituform claims as damages, among other things, the attorneys fees and costs it incurred in obtaining the injunction against Vance, and a jury would be allowed to consider that as proof of damages.

Insituform finally raises claims of civil conspiracy for defendants' violation of MUTSA and for the asserted tortious interference. Obviously, if it cannot prove those claims, it cannot prove the conspiracy claim, but, as set out above, that is disputed. "A claim of conspiracy must establish: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby damaged." Oak Bluff Partners, Inc. v. Meyer, 3 S.W.3d 777, 781 (Mo. 1999) (en banc) (citation omitted). Evidence of an agreement to do an unlawful act can be established by evidence of defendants' aiding Vance in his breach of his contract with Insituform. See Property Tax Representatives, Inc. v. Chatam, 891 S.W.2d 153, 159 (Mo. Ct. App. 1995). Whether that happened, along with all the other elements, is contested, and the parties have presented evidence that can be viewed in several different ways.

## Conclusion

The parties filed voluminous briefs, but both sides should have realized that

the effort was futile. All of the elements are disputed, and I have only picked out a few disputes to highlight in the discussion above. There is plenty of evidence both to support and to detract from each side's position. Credibility of the witnesses will be very important at trial. The parties' briefs are really just long forms of closing arguments, with each side explaining why it thinks it will win at trial. These are issues for the jury, not for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that the parties' motions for summary judgment [#86 and #89] are denied.

**IT IS FURTHER ORDERED** that defendants' motion for leave to file a response to plaintiff's apparent motion to strike [#116] is denied as moot.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of April, 2007.